**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

JOHN MURRY CURRY                                                                                          PLAINTIFF

v.                                                                     CIVIL ACTION NO. 5:13cv196-DCB-MTP

R. BYRD, ET AL.                                                                                          DEFENDANTS

**REPORT AND RECOMMENDATIONS**

THIS MATTER is before the Court on the Motion for Summary Judgment [56] filed by Defendant R. Byrd and the Motion for Summary Judgment [58] filed by Defendants Erica Perkins, Ella Scott, Frank Shaw, Dorothy Turner, and Sue Veal. Having carefully considered the motions and the applicable law, the undersigned recommends that the motions be GRANTED and this matter dismissed with prejudice.

**BACKGROUND**

Plaintiff John Curry, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on or about September 30, 2013.[1] The Plaintiff is a post-conviction inmate in the custody of the Mississippi Department of Corrections, and is currently incarcerated at the South Mississippi Correctional Institution. The alleged acts and omissions giving rise to this lawsuit occurred while the Plaintiff was incarcerated at the Wilkinson County Correctional Facility ("WCCF").

Plaintiff alleges that he suffers from phlebitis[2] and poor blood circulation. According to

---

[1]*See* Complaint [1] at 4.

[2]Phlebitis, sometimes referred to as thrombophlebitis, is a condition in which a vein becomes inflamed and may lead to pain and swelling. *See* Diseases and Conditions, Thrombophlebitis, MAYO CLINIC, *available at*

1

Plaintiff, Warden Raymond Byrd instructed him to see Nurse Practitioner Delores Spinks regarding his medical conditions. Defendant Byrd allegedly stated that he would follow any orders issued by Nurse Spinks. In March of 2013, Nurse Spinks allegedly ordered that (1) Plaintiff take a shower every day because he suffers from rectal bleeding, (2) Plaintiff be housed in a cell by himself, and (3) Plaintiff be allowed to exercise or work outside of his cell in order to help his poor blood circulation.

According to Plaintiff, Nurse Spinks's instructions were followed for a few months, but after that period of time, there were multiple instances when the instructions were not followed. Plaintiffs alleges that inmates, including Plaintiff, were allowed out of their cells to shower on Mondays, Wednesdays, and Fridays. On the other days of the week, however, Plaintiff was sometimes not allowed out of his cell to shower and exercise.

Specifically, Plaintiff alleges that on the days Sue Veal worked as a tower officer, she would not allow Plaintiff out of his cell. He alleges that Captain Ella Scott sometimes would only intermittently allow Plaintiff out of his cell. He alleges that, on at least one occasion, Sargent Dorothy Turner would not allow Plaintiff out of his cell. Additionally, Turner allegedly informed Plaintiff that Captain Erika Perkins did not want Plaintiff taken out of his cell every day. However, every time Plaintiff spoke to Defendant Perkins about leaving his cell, she would allow it.

Plaintiff also alleges that for most of the time after March of 2013, he was housed by himself, but for short periods of time, he had a cell mate. Plaintiff complains that his cell mates could have injured him due to the fact he takes blood thinners. Plaintiff, however, concedes that he was never

---

http://www.mayoclinic.org/diseases-conditions/thrombophlebitis/basics/definition/CON-20021437 (Last visited January 23, 2016).

injured by his cell mates. Plaintiff allegedly spoke to Warden Frank Shaw about the occasional denial of showers and exercise and his cell mate situation, but Defendant Shaw did not rectify the situation.

Plaintiff asserts that he suffered discomfort due to the lack of daily showers and asserts that the occasional lack of exercise caused his medical conditions to worsen, leading to his hospitalization on multiple occasions. At the hearing, Plaintiff was unable to state what relief he seeks. In his Complaint, however, Plaintiff stated that he is seeking a minimum of $50,000 for pain and suffering.

In their respective motions for summary judgment, Defendants argue they are entitled to judgment as a matter of law because the Plaintiff has failed to submit any competent evidence establishing their deliberate indifference to his medical needs, and that the Plaintiff has not fulfilled the physical injury requirement of the Prison Litigation Reform Act. Plaintiff has filed no response to the Defendants' motions and the time for doing so has long since passed.

## **STANDARD**

A motion for summary judgement will be granted when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of

3

proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 ((emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious health and safety needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is "an extremely high standard" that encompasses "only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The test for deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837. Deliberate indifference may arise when prison officials "intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). However, the Eighth Amendment does not afford protection against "mere discomfort or inconvenience." *Dominguez v. Hoover*, 2010 WL 2382325, at *3 (N.D. Tex. Feb. 2, 2010) (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995)).

In addition to establishing deliberate indifference, a prisoner plaintiff requesting monetary damages must also establish a physical injury resulting from the acts of prison officials. *See* Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). The United States Court of Appeals for the Fifth Circuit has interpreted the "physical injury" requirement of the PLRA to require more than a *de minimis* injury. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

### *Claims Regarding Denial of Showers and Single Cell Housing*

Plaintiff alleges that Nurse Practitioner Delores Spinks directed him to shower daily because he suffers from rectal bleeding, and also directed that the Plaintiff be housed alone because it would be difficult for him to recover from any injuries sustained in the event he was attacked by his cell mates. The Plaintiff alleges that the Defendants occasionally refused to comply with the Spinks's orders, and argues that this interference with his prescribed treatment constitutes deliberate indifference. In support of his claims, the Plaintiff offers "medical passes" signed by Spinks that allow for a "pass to shower daily" and for "single housing due to present medical condition."[3]

The undersigned finds that the Plaintiff's allegations fail to establish the Defendants' deliberate indifference. Plaintiff testified at the hearing that although he sometimes did not take a shower everyday, he still received three showers a week at a minimum, and that there were some weeks that he received a daily shower as ordered.[4] He also admits that he was housed alone for the

---

[3] *See* Medical Passes [35-2] and [35-3].

[4] *See* Omnibus Hearing Transcript [58-1] at 24.

majority of his incarceration at WCCF.[5] Intermittent interference with an inmate's housing arrangement or ability to take a shower does not demonstrate an "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," and the Plaintiff has submitted no evidence to the Court indicating that the Defendants were acting with intent to cause him harm. *McCormick*, 105 F.3d at 1061; *see also Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). ("[O]ccasionally a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities.").

Moreover, as outlined above, a prisoner plaintiff seeking monetary damages must establish a physical injury resulting from the acts of prison officials under the PLRA. *See* 42 U.S.C. § 1997e(e). Allegations of a *de minimis* injury will not suffice. *See Siglar*, 113 F.3d at 192. The Plaintiff in this case has failed to allege, must less establish, that he suffered any physical injury as a result of the Defendants actions. The Plaintiff testified at the hearing that he suffered discomfort due to the lack of a daily shower, and conceded that although he was not always housed alone, he was never attacked by his cell mate. Such allegations do not rise to the level of a constitutional violation. *See Williams v. Stevens*, 192 F.3d 127 (5th Cir. 1999) (per curium) (holding that prisoner-plaintiff's alleged discomfort stated only *de minimis* injury); *cf. Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society.") (internal quotations and citations omitted).

In sum, the Plaintiff has failed to establish the absence of a genuine issue of material fact, and the undersigned recommends that the Defendants be granted summary judgment as to these

---

[5]*Id.* at 34.

6

claims.

### *Claim Regarding Lack of Exercise*

The Plaintiff also alleges that Deloris Spinks ordered him to be released from his cell everyday in order to exercise, and that the Defendants sometimes refused to follow these orders.

As an initial matter, the undersigned notes that the evidence submitted by the Plaintiff in support of his claims does not indicate that Spinks ordered him to exercise outside of his cell everyday. One medical pass, signed by Spinks and dated March 13, 2013, prescribes a pass "to work detail due to need to increase circulation due to medical condition.[6]" There is no indication on the medical pass that the Plaintiff required exercise everyday, or that he needed to be released from his cell to do so.

In support of their motions for summary judgment, Defendants submit a portion of the Plaintiff's medical records from WCCF.[7] *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (medical records of sick calls, examinations, diagnoses, and medications may rebut an imate's allegations of deliberate indifference); *Harris v. Epps*, 523 Fed. App'x 275, 275 (5th Cir. 2013) (per curium) (affirming summary judgment where inmate's medical records reflected that he had received ongoing medical treatment). These records are likewise devoid of any indication that the Plaintiff was ordered to exercise on a daily basis. In fact, on March 13, 2013, Delores Spinks noted that she intended "[t]o write a new pass to have exercise privileges with in [sic] the barrier of the system rules."[8] This note evidences Spinks's intent to qualify the Plaintiff's exercise privileges, as

---

[6] *See* Medical Pass [35-1].

[7] *See generally* Medical Records [56-1] and [58-2].

[8] *Id.* at 130.

7

opposed to ensuring that he exercised everyday without fail, as the Plaintiff alleges.

Even assuming the Plaintiff was ordered by Spinks to be allowed out of his cell everyday to exercise, he alleges only minimal interference by the Defendants. The Plaintiff generally alleges that sometimes the Defendants would let him exercise, but not often enough.[9] As outlined above, the occasional failure of prison officials to follow prescribed treatment does not amount to deliberate indifference. *See Mayweather*, 958 F.2d at 91; *see also Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986) (holding that only an *extended* deprivation of exercise opportunities might impinge upon an inmate's Eight Amendment rights); *Gins v. South Louisiana Correctional Center*, 2008 WL 4890884, at *6 (W.D. La. Sept. 9, 2008) (holding that the alleged denial of all exercise privileges for short durations does not state a cognizable claim).

Finally, the Plaintiff has failed to provide any evidence showing that he suffered a physical injury due to lack of exercise, as is required by the PLRA. Plaintiff testified at the *Spears* hearing that he has suffered blood clots leading to several hospitalizations, which he attributes to the Defendants' refusal to allow him to exercise daily. However, the Plaintiff's uncontested medical records are completely devoid of any indication that he has actually suffered blood clots or that he sustained any other lasting injury due to an occasional lack of exercise at WCCF. On March 21, 2013, the Plaintiff was transported to Field Memorial Hospital due to a critically high PT/INR.[10] He returned from the hospital later the same day, and was ordered to not take his coumadin prescription

---

[9]*See* Omnibus Transcript [58-1] at 40.

[10]*See* Medical Records [58-2] at 137. PT/INR is an acronym for Prothrombin Time and International Normalized Ratio. The test measures how well a blood-thinning medication, such as coumadin, is working to prevent blood clots. *See* National Blood Clot Alliance, http://www.stoptheclot.org/news/article120.htm (Last visited January 23, 2016).

for a day.[11] There is no evidence that the Plaintiff suffered a blood clot on this occasion; rather, the fact that he was ordered to abstain from taking his blood-thinning medication indicates the opposite. On June 14, 2013, the Plaintiff reported swelling of his left foot and was again transported to a non-prison hospital.[12] The Plaintiff again returned to WCCF the same day, after having been cleared for blood clots and infection.[13]

At this stage of the proceedings, Plaintiff can longer rest on the allegations contained in his pleadings. *See Celotex*, 477 U.S. at 325-26. The Plaintiff must instead come forward with evidence illustrating a genuine dispute of material fact, and he must do more than re-assert the allegations contained in his complaint. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (holding that once the movant has pointed out the absence of evidence supporting the nonmoving party's case, a party confronted with a motion for summary judgment is required to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."). The Plaintiff has offered nothing to contradict his medical records, and he filed no response to the Defendants' motions for summary judgment. Accordingly, the undersigned recommends that the Defendants be granted summary judgment as to this claim.

## RECOMMENDATIONS

For the reasons outlined above, the undersigned recommends that the Motions for Summary Judgment [56] and [58] be GRANTED and this matter be dismissed with prejudice.

## RIGHT TO OBJECT

---

[11]*See* Medical Records [58-2] at 138.

[12]*Id.* at 158-59.

[13]*Id.*

9

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 28th day of January, 2016.

s/ Michael T. Parker
United States Magistrate Judge